## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

Civil Action Number:  2:17-cv-495-FtM-38MRM

JUAN CARLOS GIL,

      Plaintiff,

vs.

KTB FLORIDA SPORTS ARENA LLC

      Defendant

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE MOTION TO STRIKE AND INCORPORATED MEMORANDUM OF LAW**

---

Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, hereby respectfully files this Response in Opposition to Defendant KTB Florida Sports Arena, LLC's Motion to Dismiss or in the Alternative, Motion to Strike and Incorporated Memorandum of Law [DE #24], and in support thereof states:

1.    The underlying action is an action for declaratory and injunctive relief pursuant to Title III of the American with Disabilities Act, 42 U.S.C. §12181, et. seq., ("ADA").

2.    Plaintiff Filed his Amended Complaint (heretofore referenced as "Complaint") on October 3, 2017 [DE #14].

3.    Defendant KTB Florida Sports Arena, LLC ("Movant," or "Defendant") filed its Motion to Dismiss or in the Alternative, Motion to Strike Plaintiff's Amended Complaint (hereinafter jointly referenced as "Motion") on November 14, 2017 [DE # 24].

## MEMORANDUM OF LAW

**I.**    **Federal Rules of Civil Procedure**

1

**A.  FRCP Rule 8(a) - Statement of Claim:**

The question before this court is whether Plaintiff's Complaint meets the minimum requirements of Rule 8(a)(1)&(2) of the FRCP withstand the Movant's Motion to Dismiss.

The Complaint complies with FRCP Rule 8(a) as: it contains a short and plain statement of the grounds for the court's jurisdiction (¶¶s 7-10 [DE #14]), it establishes that the Plaintiff suffers from a qualified disability (¶¶s 12-13 of [DE #14]).

The Complaint properly alleges and establishes that Defendant maintains the Germain Arena (which is an entertainment venue serving food and drinks and selling memorabilia is open to the public and therefore qualifies as a "Place of Public Accommodation" pursuant to 42 U.S.C. §§s 12181(7)(B), (C), & (E) and 28 C.F.R. §36.104. (¶¶s 19-23 [DE #14]).

The Complaint establishes that the www.germainarena.com website ("Website") has a direct nexus to the Germain arena, eating/drinking establishments, and Pro Store within the arena and therefore the Website qualifies as a "Place of Public Accommodation" pursuant to 42 U.S.C. §§s 12181(7)(B), (C), & (E).  (¶¶s 25-27, 29 [DE #14]).

The Complaint delineates the Website's nexus to Defendant's Germain arena, eating/drinking establishments, and Pro Store within the arena.  By extrapolation, Movant has admitted to Plaintiff's allegation that its Website is a "Place of Public Accommodation" pursuant to 42 U.S.C. §§s 12181(7)(B), (C), & (E), thus that Defendant has subjected itself and its Website to the ADA.  As such, Plaintiff has met the threshold for factual content as illustrated at *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 556).

Factual allegations within the Complaint clearly state that Plaintiff called Defendant and was directed to Defendant's Website for the answers to his questions (¶ 31 [DE#14]).  The Complaint clearly states that Plaintiff attempted, and was precluded from, accessing Defendant's Website (¶¶s 32-35, DE #14]).   The Complaint clearly states Plaintiff suffered an injury-in-fact

2

[¶ 38, [DE#14]) and further that Plaintiff continues to desire to patronize the Germain arena but is unable to do so as he is unable to effectively communicate with the Defendant and therefore will continue to suffer injury (¶ 39 [DE#14]).

Since the proper elements for cause of action are stated within the four corners of the Complaint, it is up to the trier of fact to determine through trial whether Plaintiff's or Defendant's argument has merit, and is not a matter for a motion to dismiss.

The Complaint contains a short and plain statement of the claim showing that the pleader is entitled to relief by establishing that he is sufficiently disabled, and that Defendant's business is operated in a manner that contains *barriers to access* and that Defendant has *failed to provide effective communication* which jointly and severally serve to exclude individuals who are visually impaired from full access to Defendant's goods and services.

### B. FRCP Rule 12(b)(1) – Subject Matter Jurisdiction - Factual Basis:

Movant's allegations are without merit, as the Complaint contains the factual basis for the claim. The Complaint states that Plaintiff "called the Germain Arena to inquire about the upcoming events at the Germain Arena." (¶31 [DE#14]). The Complaint states that "December 2016, Plaintiff attempted on several occasions to utilize Defendant's Website to browse through the schedule of events for times, dates, seating and ticket prices to educate himself as to the Germain Arena upcoming events and other accommodations provided at the Germain Arena with the intent then going to the Germain Arena to attend an event." (¶33 [DE #14]).

The Complaint provides a detailed factual scenario supporting Plaintiff's allegations as to ADA violations and presents all elements required to plead the requisite injury-in-fact. Thus dismissal of Plaintiff's ADA claim is not warranted. The Court can therefore establish subject matter jurisdiction; *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F. 3d 405, 410 (11th Cir. 1999).

Plaintiff alleges that, as a result of the failure of Defendant to render its Website accessible to blind and visually impaired individuals [¶33 DE#14], the Plaintiff suffered particularized harm and an injury in fact and has not had access to the sporting events and artistic performance hosted at Defendant's Germain arena [¶38 DE#14]. Thus, the complaint satisfactorily meets the requirements of Rule 12(b)(1), subject matter jurisdiction.

In analyzing the likelihood that a plaintiff will suffer a future injury, courts consider: (1) the proximity of the public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of plaintiff's plan to return; and (4) plaintiff's frequency of travel near the defendant; *Hoewishcer v. Cedar Bend Club, Inc.,* 877 F. Supp. 2d 1212, 1222-23 (M.D. Fla. 2012).

While the courts have considered a rule-of-thumb for a 100 mile radius for consideration of proximity and likelihood of return, sporting and entertainment events fall outside of the 100 mile radius general rule since it is common practice for Floridians to travel across the state to attend entertainment events (for example, to Busch Gardens, Universal Studio, and Disney entertainment parks in Central Florida) and a 140 mile drive is not onerous in the least. Therefore, the fact that Plaintiff resides 140 miles from the Germain arena does not foreswear Plaintiff's patronage of that arena, since events held therein are not also held at entertainment venues closer to Plaintiff's residence.  The Complaint states that, while disabled, Plaintiff is an athlete, an advocate for the disabled, and a frequent traveler (¶14 [DE #14]).

A causal connection between Defendant's conduct (Website' lack of accessibility to blind individuals) and Plaintiff's injury (inability to comprehend Defendant's Website and therefore to patronize the Germain arena) has been established, as the Complaint alleges  Plaintiff visited Defendant's Website on several occasions for the purpose of attending events at the Germain

arena, and that he was precluded from attending events at the arena due to his inability to comprehend the Website (¶32 [DE #14]), thus Plaintiff suffered an injury (¶¶s 37, 38 [DE #14]).

Movant has cherry-picked the court's opinion in citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) to support its position. In *Lujan* Justice Scalia stated that lack of standing turned upon the fact that showing an injury-in-fact by a third party (as opposed to an individual) is difficult to show, therefore ruled against third party respondent (Defenders of Wildlife). In this case, Plaintiff is not a third party but an individual, therefore the *Lujan* lack of standing argument is not applicable. Plaintiff has established intent (defined in *Lujen*) to patronize Defendant, as Plaintiff has plead he has returned to Defendant's Website and is still precluded from attending the Germain arena (¶32 [DE #14]).

Plaintiff has demonstrated threat of future injury and in seeking injunctive relief, Plaintiff has shown a real and immediate threat of future injury, as he has plead he desires to patronize the Germain arena to attend events in the future (¶¶s 38, 39 [DE #14]) which is altogether unlike *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 101-02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)[1]. In *City of Los Angeles,* the court ruled that plaintiff Lyons failed allege a sufficiently plausible threat of future injury to himself to have standing for an injunction against the LAPD's chokehold policy.

In presenting its factual attack on standing (*Rosenkrantz v. Markopoulos*, 254 r.Supp.2d 1250, 1251-52 (M.D. Fla. 2003)), Movant has presented Declaration of Elizabeth Marquess [DE #24-4]; declaration  [DE #24-4] is deficient and should be struck, as it does not state the dates of

---

[1] In 1976, Lyons was stopped for a broken tail light, was told to spread his legs, hands on top of his head. After being frisked, Lyons put his hands down. This prompted one officer to grab his hands and slam them against his head, put him in a chokehold until he lost consciousness, and he awoke up lying face down in the road, bloody and dirty. Lions sought both compensatory damages for the chokehold, and declaratory and injunctive relief against the LAPD's chokehold policy (evidence introduced including the fact that 16 people had been killed by LAPD using chokeholds from 1975 to 1983). The court ruled Lyons had standing for compensatory damages.

the declarant's employment to include the time which Plaintiff has stated he contacted the Germain arena.   Plaintiff presented facts stating he called Defendant and was not assisted. Therefore there is an issue of fact which should be heard by a trier of fact; this is not an issue for a motion to dismiss. In the Complaint Plaintiff has alleged that he repeatedly attempted to use Defendant's Website and was precluded from doing so (¶32 [DE #14]), therefore the Complaint meets the facial challenge of *Shotz v Cates,* 256 F 3d 1077, 10/1 (11th Cir 2001).

In its Motion, Movant misleads the court in claiming that the Middle District has rejected websites as places of public accommodation by citing the Court's ruling in *Kidwell v. Fla. Comm'n on Human Relations*, Case No. 2:16-cv-403-FtM-99CM, 2017 WL 176897 (M.D. Fla. Jan. 17, 2017), which ruled that Kidwell was precluded from pleading a claim based on accessibility of a website under the ADA.   Based upon the convoluted complaint presented in *Kidwell* the Court's ruling regarding the accessibility of a website cannot be taken as case law.

The court's commentary and ruling regarding the website in *Kidwell* cannot be considered as a touchstone for case law regarding accessibility of websites under the ADA due to the unique fact scenario presented by *Kidwell*.   In *Kidwell* plaintiff failed to provide specificity as to the nature of the website inaccessibility nor did plaintiff apply any standard of accessibility. Due to the ill-defined nature of the *Kidwell* website claim, the court could not, and did not, address the website allegation[2].   The issues related to plaintiff's lack of standing in *Kidwell* are non-existent in the instant case and the elements which lead to the Court's dismissal of the *Kidwell* action are not present in the instant action.

---

[2] In *Kidwell,* allegations as to 'a website' were so inexplicit that the court stated it could not distinguish if the plaintiff were alleging Sea World or Bush Gardens' website was inaccessible. Kidwell's juxtaposition of websites (Busch Gardens and Sea World) hindered the court's ability to render any decision on the viability of plaintiff's website accessibility claim.

The court also stated it could not rule in *Kidwell* regarding allegations of website inaccessibility because the plaintiff had not based his argument on a standard of accessibility but on his confusion; plaintiff Kidwell sadly complained the ".. website was complex to navigate and did not provide accommodations for Plaintiff's disability." *Id*. ¶¶ 180, 182-83.

### C. FRCP Rule 12(b)(6) Statement of Claim upon which relief may be granted:

With respect to FRCP Rule 12(b)(6), Plaintiff has plead with sufficiency of facts as to a claim upon which relief may be granted.  The Complaint contains a demand for the relief. The Plaintiff has demanded that Defendant: a) adopt and implement an accessibility policy to ensure visually impaired patrons have full and equal enjoyment and access to the goods and services Defendant offers to the public, b) take steps to make the most important parts of its Website are accessible to the visually impaired, and c) provide working auxiliary aids and services so visually impaired individuals will be able to effectively communicate with Defendant (¶ 97 [DE #14]), as well as Demand For Relief at (a)-(j) of [DE #14]

The legal basis for the Plaintiff's claim is delineated  ¶¶s 63-95 [DE #14] and is based upon Defendant's systematic violation of the ADA by creating barriers to access for individuals with disabilities who are visually impaired and who require the assistance of auxiliary aides and services 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

The Movant alleged failure to meet the requirements of FRCP Rule 12(b)(6) without providing evidence to support its claim, and its argument to dismiss on this basis becomes moot.

## II.    Plaintiff Is Entitled to Make Claim for a Place of Public Accommodation which is Not a Physical, Concrete Structure under Title III, 42 U.S.C. §§s 12181-12189

The Movant argues that Defendant's Website is not subject to the ADA, utilizing the premise that Websites are not physical, concrete structures, under Title III of the ADA.

This Court should deny Movant's Motion and find that the ADA is Law of the Land. The year is not 1997 but is 2017, and internet pervades our shopping and living experiences; therefore, barriers to access as defined within the ADA are applicable to the internet.  The cannons of the effective communication case law, as articulated within this Response brief, clearly shows that, when Public Accommodations such as the Defendant choose to offer a

7

website, they must provide auxiliary aids and services to ensure effective communication for the visually disabled in a manner such that their website is fully accessible to the disabled.

A.    **Congress Intended the ADA to Be Responsive to Changes in Technology, Especially with Respect to Available Accommodations.**

In its motion, the Movant argues that the Eleventh Circuit has not squarely addressed whether commercial websites are public accommodations. In so doing, the Movant has misread the facts, case law and the statutes.

The Movant attempts to distinguish the instant case from *Gil v. Winn-Dixie Stores, Inc.* 1:16-cv-23020-RNS [DE #32] (S.D. Fla. March 15, 2017) by stating that the gravamen of the Court's decision in *Winn-Dixie* was the fact that Gil had a long an ongoing relationship with Winn Dixie stores and that Plaintiff does not have such relationship with Defendant's Germain arena. The gravamen of the Court's decision in *Winn-Dixie* was not 'long ongoing relationship; but was the establishment of **nexus** between Winn Dixie's physical stores and its website based on the fact that the website was "heavily integrated" with its stores.  In the instant case, Plaintiff has alleged nexus and that the inaccessibility of Defendant's Website **directly impeded** his ability to visit the Germain arena (the subject of Defendant's Website). Thus meeting the same definitive test as the court considered in *Winn-Dixie.*

In this instant case, Plaintiff was intending to patronize the Germain arena with the intent of enjoying the events held therein. The fact scenario in the instant case is substantially similar to that in *Winn-Dixie*. In fact, the Court issued its Verdict in the *Winn-Dixie* case, wherein Judge Scola found that:

> "The Court need not decide whether Winn-Dixie's **website is a public accommodation** in and of itself, because the factual findings demonstrate that the website is heavily integrated with Winn-Dixie's physical store locations." *Gil v. Winn-Dixie Stores, Inc.* 1:16-cv-23020-RNS [DE #63] (S.D. Fla. June 13, 2017). (**emphasis added**).

In the instant Complaint, Plaintiff has plead nexus with sufficiency to meet the standard as ruled upon by the court in denying Winn-Dixie's Motion to Dismiss, wherein the court stated that "district courts in the Eleventh Circuit have found that ***websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation***." (***emphasis added***) citing *Gomez v. Bang & Olufsen Am., Inc.* 1:16-cv-23801-JAL, 2017 U.S. Dist. LEXIS 15457(S.D. Fla. Feb. 2, 2017).

Recent case law is not limited to *Winn-Dixie*. Within this district, Judge Williams has issued a Final Judgment[3] requiring the Defendant to undertake steps to make its website complaint with the ADA and readily accessible and usable to people with disabilities, see *Gomez v. J.Lindeberg USA, LLC.* 1:16-cv-22966-KMW [DE #24] (S.D. Fla. October 18, 2016).

As with the rest of the ADA, the statute's legislative history indicates the list of public accommodations "***should be construed liberally***" to afford people with disabilities equal access to the wide variety of establishments available to the non-disabled. *PGA Tour, Inc., v. Martin*, 532 U.S. 661, 676-77 (2001) (emphasis added).

In its argument to limit places of public accommodation and excuse its own off-site discrimination, the Movant cites *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002) and *Rendon v.Valleycrest Prods., Ltd.*, 294 F. 3d 1279 (11th Cir. 2002), and does not consider the ADA's legislative history and Congress' intent. The legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars enumerated in 42 U.S.C. § 12181(7) to be "construed liberally" in harmony with the ADA's broad purpose.

More recent court decisions have reversed the *Southwest Airlines* and *Rendon* opinions:

---

[3] Final Judgment was based on a finding of default against the Defendant for failure to answer or otherwise respond to the Complaint, see DE #23, *J.Lindeberg*.

"[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. ***The Committee intends that the 'other similar' terminology should be construed liberally*** consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities." *Netflix,* 869 F. Supp. 2d at 200 (citing S. Rep. No. 116, at 59 (1990) *Scribd,* 97 F. Supp. 3d at 572-73 (same) (emphasis added).

Contemporary interruption of Congress' intent in establishing defining characteristics of public accommodations is that places of public accommodation offer goods or services to the public, not that they offer goods or services to the public at a physical location. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(III), at 54 (1990)).

Therefore, a person alleging discrimination does not have to prove that the entity being charged with discrimination is similar to the examples of the specific private entities enumerated in 42 U.S.C. § 12181(7). *Id.* Rather, what matters is that the entity provides a service or a good, which enables it to fall into one of the general ***categories*** of entities enumerated by subsection 7. *Id.* (citing S. Rep. 101-116, at 54 (1990)) ("Similarly, although not expressly mentioned, bookstores, video stores, stationary stores, pet stores, computer stores, and other stores that *offer merchandise for sale or rent* are included as retail sales establishments.") (emphasis supplied); *Netflix,* 869 F. Supp. 2d at 200 (citing H.R. Rep. No. 485 (III), at 54 (1990)) ("A person alleging discrimination does not have to prove the entity being charged with discrimination is similar to the examples listed in the definition. Rather, the person must show the entity falls within the overall category.").

Congress specifically reasoned that the defining feature of a "public accommodation" is the ***service offered*** and ***not the location of the service offered***. As stated *supra*, the Website is an

extension of the Germain arena by offering a site locator to the Germain arena, information on events to be held therein, a seating chart, and a hyperlink to www.ticketmaster.com for purchasing tickets to events to be held at the Germain arena.  (¶¶s 25-27 [DE #14]).

In the instant case, Plaintiff has alleged that Defendant's representative referred him to the Website when he called for information (¶31 [DE#14]), and that he then attempted to utilize Defendant's Website, however the Website contained access barriers that prevented the Plaintiff (a visually impaired individual) from comprehending the Website and from free and full use of the Website (¶¶s 32-34 [DE #14]); therefore Plaintiff was unable to obtain information about the Germain arena and events held therein.

The Complaint properly alleges that Defendant's Website is/was inaccessible to the visually impaired community of customers because they are unable to effectively communicate with Defendant, therefore visually impaired individuals are unable to shop for entertainment events and seating options at the Germain arena efficiently and informatively as the public, since they are not privy to the product information available online and not readily available or ascertainable by/at Defendant's Germain arena (¶¶s 37-38 [DE#14]).

For all these reasons, this Court should take into account the congressional intent and legislative history in enacting the ADA, and deny Defendant's Motion.

### B.     The Statutory Construction of The ADA Demonstrates Its Applicability Is Not Limited to Physical "Brick and Mortar" Locations.

In support of its Motion, Movant relies on the fourteen year old ruling in *Southwest Airlines* 227 F Supp. 2d 1312 (S.D. Fla 2002)[4] to attempt to discount the importance and primacy that Websites play in the modern shopping and entertainment experience.

---

[4] In *Access Now, Inc. v. Southwest Airlines, Co.,* 385 F.3d 1324, 1328-29 (11th Cir. 2004), the 11th Circuit dismissed the plaintiff's appeal because the plaintiff presented a new theory of liability that the district court did not have an opportunity to consider, namely, that Southwest Airlines as a whole is a place of

The Court's decision in *Southwest Airlines* bears no relation to the instant case. The Eleventh Circuit was explicitly clear; **it could not evaluate** the merits of whether the Southwest.com website (when viewed in a vacuum) **was itself a public accommodation because the claim was abandoned on appeal** and **could not evaluate whether the Southwest.com website had a sufficient nexus to Southwest Airlines because the theory was not raised in the trial court**. *Southwest Airlines*, *227 F. Supp. 2d*. at 1329-30 states:

> Our problem on appeal is that the new argument depends on critical facts (and a new theory) neither alleged in the Complaint nor otherwise presented to the district court. Simply put, the plaintiffs now contend that "there is a sufficient nexus between [Southwest's] physical 'facilities' and their offsite internet use to prohibit discrimination.' To support this claim, the plaintiffs must show that these 'physical 'facilities'' exist and that they bear a reasonable 'nexus' or connection with Southwest.com that subjects it to the public accommodations requirements of Title III. The plaintiffs say for the first time on appeal that 'Southwest is introducing self-service physical kiosks at physical airport facilities in which it operates,' and that 'Southwest maintains many physical locations throughout the United States, including its headquarters in Texas, and locations throughout airports at its destination cities' (*internal citations omitted*).

Notwithstanding the above, in the instant case, Plaintiff has met the criteria set out by the Eleventh Circuit in *Southwest Airlines*. Plaintiff has alleged that the Germain arena is a place of public accommodation and that the Website is part and parcel of that place of public accommodation as the Website has a direct nexus to the Germain arena.

In his Complaint, Plaintiff has alleged that his inability to effectively communicate with Defendant has caused him lack of access to Defendant's business location (the physical Germain arena). In the instant Complaint, Plaintiff has followed the *Southwest Airlines/Rendon* roadmap to state a valid claim for off-site discrimination; thus Movant's argument fails.

---

public accommodation because it operates a travel service. The 11th Circuit in that opinion did not ultimately decide the issue of whether a website is a place of public accommodation under the ADA.

Furthermore, by internet standards, the *Southwest Airlines*[5] decision is ancient. Since the 2002 *Southwest Airlines* decision, other district courts have ruled to the contrary and have been critical of the Court's *Southwest Airlines* interpretation of the ADA and its application to websites. Courts recently have held websites are places of public accommodation regardless of whether the website has a connection with a physical structure.

For example, in *Netflix,* 869 F. Supp. 2d 196, 199 (D. Mass. 2012) the plaintiff sued Netflix, Inc. ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for hearing impaired individuals. Netflix filed a motion for judgment on the pleadings arguing the plaintiff failed to state a cause of action under the ADA because Netflix's "Watch Instantly" website was not a place of public accommodation under the doctrine of *ejusdem generis*.

The District Court rejected Netflix's application of *ejusdem generis* outright and found its interpretation of the ADA's plain language to be unpersuasive. *Id.* In looking at the plain language of the statute, the District Court noted the ADA covered the services ***"of"*** a public accommodation and not services ***"in"*** a public accommodation. *Id.* (citing 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations ***of*** any place of public accommodation. . ."); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006).  This linguistic distinction was crucial, because under Netflix's reading of the ADA, many businesses that provided services to a customer's home (i.e.

---

[5] According to the blog at http://www.fatdux.com/ it can be deduced that one year in real time is equal to 4.7 years of internet development time.  i.e.  it can be demonstrated  that 65.7 years of internet development improvement and programming has transpired since the *Access Now* case was last reviewed.

plumbers, pizza delivery services) would be exempt from the ADA[6]. *Id.*

Similarly, in *Scribd* F. Supp. 3d 565, 567 (D. Vt. 2015)*,* the Court denied dismissal and rejected Scribd's arguments that Congress's use of the phrase "***place*** of public accommodation" and the doctrine of *ejusdem generis* show that a public accommodation is defined exclusively as a physical space. *Id.* at 572.   The court looked at the language of the ADA as written in 42 U.S.C. § 12181(7), which enumerates the categories of public accommodations covered by the statute and reasoned that 42 U.S.C. § 12181(7) is entitled, "Public Accommodation" and not "Places of Public Accommodation," and refers to private entities as "public accommodations," not "places of public accommodation." *Id.*

These more recent Court decisions reflect the Court's technological modern approach to the ADA, in the Court's recognizing that public accommodations "must be available to the public, ***but not necessarily at a physical place open to the public***." *Id.*

Based on the plain language of the ADA, a website is a public accommodation because it is a private entity that provides goods and/or services, which fall into the categories enumerated within 42 U.S.C. §12181(7).   As such, Movant's Motion should be denied.

### C.   Defendant's Website Contains Inaccessible Elements

In support of its Motion, the Movant has provided a Declaration by Mathew Connar [DE #24-3] stating that in September 2017 his company was retained by Defendant to "harmonize the website with the Web Content Accessibility Guidelines 2.0 Level AA."   The Defendant's actions to bring its Website into WCAG 2.0 guidelines was, by its own admission, one month after

---

[6] While the Court rationalized that while the home itself is not a place of public accommodation, entities that provided services in the home through the internet, such as Netflix, could qualify as places of public accommodation. Thus in *Netflix*, the court held Netflix's streaming service was a public accommodation because its service fell into the same category of services provided by a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment" and "service establishment," which are all enumerated by 42 U.S.C.S. § 12181(7). *Id.* at 200.

Plaintiff filed the instant complaint (August 30, 2017).   According to declarant Connar, the Website is now accessible. Plaintiff contains Defendant's Website is not fully accessible. Plaintiff contends that the Website's hyperlink for purchasing tickets, leads the user to www.ticketmaster.com, which website contains inaccessible elements for blind users such that Plaintiff is  unable to independently purchase tickets to events at Germain arena, despite Defendant's revision in its Website (according to the heretofore unsupported Declaration of Connar [DE #24-3]. The full extent of inaccessibility will be provided by Plaintiff with its Expert Report, in accordance with the court's Scheduling Order and discovery deadlines.  Furthermore, the Declaration of Mathew Connar should be a part of a summary judgment motion and not a motion to dismiss, and therefore should be struck as related to the Motion filing [DE #24].

Recent Case law supports the Plaintiffs position, that companies which that have not fully updated their websites so that they are accessible to visually impaired individuals are not immune to redress. In *Frazier v. Churchill Downs Incorporated,* Case No. 16-cv-01898-AJS (W.D. Pa. April 21, 2017) the Defendant filed a Motion to Dismiss challenging Plaintiff's standing for the same reasons as cited by the Movant hereon.  In the Court's Memorandum Opinion, the Court denied Churchill Downs' Motion to Dismiss by ruling that, because Churchill Downs' websites barred Plaintiffs' screen reader software from reading the content of its websites, Plaintiffs were unable to participate in the services provided by Churchill. The Court ruled that the Plaintiff had pled with sufficiency that Churchill Downs' website impediment had a negative impact on Plaintiffs' ability to frequent Churchill's physical location(s).  Therefore, the Court held that Plaintiff has established an injury-in-fact under Article III of the ADA. Further, the Court found that until the websites are configured in such a way so as to eliminate the barriers which prevent Plaintiffs' website reading software to work, any attempt on Plaintiff's

part to return to the Churchill websites would be futile. Thus, the Court denied Defendant's Motion to Dismiss.

In *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] the Court denied Defendant's Motion To Dismiss and rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

### D. Defendant's Representatives Have Failed To Assist Blind and Visually Impaired Individuals, Referred them to the Website, Where Barriers to Access Exist

In support of its Motion, the Movant has provided a Declaration by Elizabeth Marquess [DE #24-4]; declaration  [DE #24-4] is deficient and should be struck, as it does not state the dates of the declarant's employment to include the time which Plaintiff has stated he contacted the Germain arena. The Movant's presentation of its Elizabeth Marquess [DE #24-4]; declaration should be through a summary judgment motion and not in this instant motion. Plaintiff stands by allegations delineated within the four corners of the Complaint, that he contacted Defendant's representative and was referred to Defendant's Website (¶31 [DE #14]).

Since Defendant's Website contains inaccessible elements for purchasing tickets to events to be held at the Germain arena (i.e.: the www.ticketmaster.com  hyperlink contains inaccessible elements), Defendant's representative failure to assist the Plaintiff is tantamount to a textbook barrier to access at Defendant's Germain arena. As a result, blind individuals are unable to become informed as to the goods and services offered at the Germain arena.

### III.   Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits a party to motion the court to

"strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

There is nothing within the Complaint which is immaterial, impertinent or scandalous (as proffered by Movant), as the Complaint has met the requirements of Rule 12(b)(1) with sufficiency.  The undersigned acquiesces to striking references within the Complaint as to trespass and supplemental jurisdiction as well as to monetary damage at page 26, ¶(h) as scriveners errors.

The Movant's arguments to strike Plaintiff's Complaint are themselves impertinent and scandalous.  In the cold spirit of then-candidate Trump's poking fun at a disabled reporter, the Movant has pointed a heartless, privileged finger at Plaintiff, stating that Plaintiff's detailing of his disabilities is improper and used as a ploy to garner "sympathy," thus making a mockery of the justice system by claiming that disabled advocates file ADA lawsuits to garner sympathy.

To support its argument striking case law, the Movant portends to read the future, by stating Plaintiff is attempting to evade page limitations on legal memoranda within its Complaint. Ridiculous. The Movant should stick with legal arguments and cease mindreading.

The Movant cites *Chevy Chase Bank, F.S.B. v. Carrington*, WL745771., at *4 (M.D. Fla. Mar. 1, 2010) and *Hernandez v. Century Corr. Inst.*, No. WL 1531238, at * 1 (N.D. Fla. Mar. 31, 2010) as its argument to 'clean up pleadings and streamline litigation'. By moving to Both *Chevy Chase* and *Hernandez* are anomalies and cannot be considered case law sufficient to strike Plaintiff's citations of (case) law, statistics on the disabled community, and other information provided on the disabled community.  These citations should be disregarded entirely; the subject paragraph within Plaintiff's Complaint are not redundant, immaterial, impertinent, or scandalous but are the legal and stylistic writing of the undersigned and an

exercise of freedom of speech as well as advocacy for the disabled community.

## IV.    Plaintiff has a good faith, factual basis for instituting numerous ADA lawsuits.

### a.    Attack on the Plaintiff's motivations and constitutional rights

The Defendant has attacked Plaintiff's motivations, based on the fact that he is Plaintiff in other ADA lawsuits, and that Plaintiff and Plaintiff's counsel have filed suit against other arenas[7].   The fact is that websites for other arenas are non-compliant does not excuse the Germain arena.   The Plaintiff is a paraplegic, suffers from cerebral palsy and is blind, and has been confined to a wheelchair for years.   These are facts, and Movant has shown itself to be mean, discriminatory, and dispirited in stating that delineating Plaintiff's disability was a ploy to gender sympathy from the court. The fact is that Plaintiff has become frustrated by his lack of access to websites after the ADA has been enacted over a quarter century ago.   Plaintiff has chosen to exercise his rights as a disabled American and demand fair, equal access to websites.

The United States Constitution guarantees to every individual their right of access to court. See generally *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002).   This principle is firmly rooted in the common law, going at least as far back as chapter 40 of the Magna Carta wherein it is stated that "We will sell to no man, we will not deny to any man, either justice or right."   But Movant asks this Court to do just that – to preclude Plaintiff and his counsel from prosecuting violations of the ADA merely based on the fact that they have litigated against, and exposed entities that have been in violation of Federal Law.   Such a result would deny Plaintiff his fundamental Constitutional rights to Due Process and Access to Courts.

---

[7] Movant cites: *Juan Carlos Gil v. Winn-Dixie Stores, Inc*, 2017 WL, 2547242; *Juan Carlos Gil v. Arena Operating Company*, Case 0:17-cv-61643 (SD FL); and *Andres Gomez v. Basketball Properties, Ltd*, Case No.1:17-cv-22513-UU (SDFL)

The law in this country not only guarantees access to courts to allow individuals to seek relief for injuries, "[t]o pass constitutional muster, access to courts must be more than merely formal; it must also be **adequate, effective, and meaningful**." *Chappell v. Rich*, 340 F.3d 1279, 1281 (11th Cir. 2003) (**emphasis added**).  The right of access to courts is "designed to insure that a citizen has opportunity to exercise his or her legal rights to present cognizable claim to appropriate court and, ***if claim is meritorious, to have court make determination to that effect and order the appropriate relief***."  *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1996) (emphasis added).  One Court has opined that "[m]eaningful access to the courts is a fundamental right of citizenship in this country; indeed, all other legal rights would be illusory without it."  *Martin v. Lauer*, 686 F.2d 24, 32 (C.A.D.C. 1982) (internal citations omitted).

### b.     The number of lawsuits filed on ADA matters is not grounds for dismissal

The Defendant has mis-labeled the Plaintiff as a serial litigant.  It is apparent that the Defendant has made this accusation based solely on the number of lawsuits (cited, 130) filed by the Plaintiff.  The number of discrimination lawsuits initiated by Plaintiff should have no bearing whatsoever as to the incident of discrimination that occurred in this specific instant matter.  To further support the undersigned's position, refer to the on-point Order issued by the Honorable Judge Dimitrouleas where he clearly stated that "The Court is not influenced by the number of lawsuits filed by the Plaintiff, given that he has the right to equal and full access to public accommodation under the ADA and thus unrestricted in the number of lawsuits he brings in asserting those rights". *Karakis v. GM Restaurants, Inc., et al,* So.Dist Fla, Case No. 08-60291.

ADA-based cases are one example of the myriad of the types of cases where one plaintiff may file similar complaints against various defendants.  For example, in "piracy actions" brought pursuant to 47 U.S.C.§ 605 et seq.  and § 553 et seq., an aggrieved plaintiff can file individual

suits against tens or even hundreds of defendants for having pirated copyrighted material.  The complaint against each defendant is similar, perhaps verbatim, in each instance, because the statutory bases and elements are the same[8].  Each case is entirely independent of the other, regardless of how similar they appear to be, and the resolution of one has no bearing on the other.  Each is considered a *distinct, original* filing.  The undersigned maintains that so too is each ADA-based case a distinct, original filing, not dependent upon, linked to, or like any other ADA-based case.  In fact, while the above-referenced piracy cases are always the same, each ADA-based case is different as to the specific, distinct violations present at a given location.  In short, since every case is fact specific, the Complaint in the instant case contains ADA violations which are not verbatim from any other ADA complaint.

Contrary to Movant's allegations, Plaintiff has clearly established he has standing to bring this cause of action. Consequently, the Defendant's Motion must fail as a matter of law.

**WHEREFORE** for all the facts and points of law delineated within this response, Plaintiff and Plaintiff's counsel, respectfully request the Court deny Defendant's Motion to Dismiss or in the Alternative Motion to Strike, or in the alternative, grant Plaintiff leave to amend the Complaint to more specifically allege more specifically the facts and points of law as FRCP Rule 15 grants the Court should freely give when justice so requires.

Dated this 12th day of December, 2017.

Respectfully Submitted,

*s/ Scott R. Dinin*
**Scott R. Dinin, Esq.**
LAW OFFICES OF SCOTT R. DININ P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Telephone: (786) 431-1333
Facsimile: (786) 513-7700

[8] Albeit, one piracy violation has no relation to any other piracy violation, even if it was "piracy" of the same broadcast, at the same time, and by similar types of establishments.

Email: inbox@dininlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and that I have served a true and correct copy of the foregoing by email to the following on this 12th day of December, 2017 to:

Allison Oasis Kahn
Carlton Fields Jordan Burt, P.A.
PO Box 150
525 Okeechobee Blvd, Ste 1200
West Palm Beach 33402
Tel 561-659-7070
Fax 561-659-7368
Email: akahn@carltonfields.com
*Counsel for Defendant*

*s/ Scott R. Dinin*